# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANNY D. STEWART, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-12-156-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Danny D. Stewart requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 18, 1957, and was fifty-two years old at the time of the administrative hearing. (Tr. 35). He completed his GED, and has worked as a bricklayer. (Tr. 24, 184). The claimant alleges that he has been unable to work since October 1, 2008, due to a left shoulder injury and panic attacks. (Tr. 179).

## Procedural History

On June 4, 2008, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 17, 2010. (Tr. 14-25). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a wide range of light work as defined in 20 C.F.R. § 416.1967(b), *i. e.*, he could lift/carry 20 pounds occasionally and 10 pounds frequently, and sit/stand/walk six hours in an eight-hour workday, but not sit more than one hour at a time. The ALJ imposed the additional psychologically-based limitations of remembering, understanding, and carrying out short

and simple instructions; working with co-workers and supervisors on no more than a superficial basis; and being unable to work with the general public. (Tr. 19). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform in the national and regional economy, *e. g.*, poultry dresser. (Tr. 25).

**Review**

The claimant contends that the ALJ erred by: (i) failing to adequately address all of his physical limitations, (ii) failing to properly assess his RFC, and (iii) improperly determining that he could perform the job of poultry dresser. In support of these contentions, the claimant argues, *inter alia*, that the ALJ failed include a limitation on his ability to reach overhead. The undersigned Magistrate Judge finds that the ALJ *did* fail to perform a proper step four analysis, and the decision of the Commissioner should therefore be reversed.

The record reveals that the claimant had the severe impairments of panic disorder with agoraphobia; major depressive disorder, single episode, severe, with psychotic features; substance dependence; left shoulder rotator cuff tear status post surgical repair; and degenerative disc disease of the cervical spine. (Tr. 16). The relevant medical evidence reveals that the claimant fell off of his roof in December 2007 and broke his left arm. (Tr. 287). Following his fall, he underwent an open reduction internal fixation of right distal radius fracture with volar plating. (Tr. 392). His surgeon counseled him that he should not expect his wrist to be normal following his surgery. (Tr. 390). He was diagnosed with a full thickness rotator cuff tear and a glenoid labral degeneration versus

partial thickness SLAP tear through an MRI on February 15, 2008. (Tr. 227-228). On March 16, 2009, Dr. Steven Smith performed a left shoulder arthroscopy, arthroscopic rotator cuff repair, arthroscopic acromioplasty with bursectomy, and arthroscopic distal clavicle excision. (Tr. 411). On May 7, 2009, Dr. Smith reported that the claimant had full active and passive range of motion, but still had some clicking crepitation with overall pain improvement. (Tr. 367). Medical records from Dr. Nelson Onaro reflect that he treated the claimant from August 2008 through at least November 2009 for, *inter alia*, neck pain, left shoulder pain, and back pain. His treatment notes largely relate to medication management, but reflect a continued assessment of those (and other) impairments. (Tr. 337-356).

On September 3, 2008, Dr. Ronald Schatzman performed a consultative physical examination of the claimant. (Tr. 302-307). Dr. Schatzman noted that the claimant had a well-healed scar with limitation of motion of the cervical spine with 30 degrees of extension and 30 degrees of flexion and 55 degrees of lateral gaze to the left and 55 to the right. He further stated that the claimant had a normal range of motion of lower extremities and normal range of motion of upper extremities except for dorsal flexion of right wrist, which was limited to 30 degrees. (Tr. 303). He assessed the claimant with neck pain, post fusion; back pain, degenerative arthritis of back by history; shoulder pain with rotator cuff injury, but still capable of normal motion; tobacco abuse; ethanol abuse; and iatrogenic drug abuse. (Tr. 304). In December 2008, a state reviewing physician found that the claimant could perform medium work, but noted a limitation for ladders, ropes, and scaffolds due to restrictions in overhead reach due to the claimant's history of

cervical surgery which may make overhead reaching and view difficult. (Tr. 329). As for his mental impairments, the claimant struggled with opiate dependence along with his major depression with psychotic features and panic disorder with agoraphobia. (Tr. 271).

At the administrative hearing, the claimant testified that he fell off his roof in December 2007 and injured his ribs, fractured his right hand, and also injured his shoulder. Additionally, he testified that he suffered from panic attacks, an affective mood disorder, hand tremors, anxiety disorder, substance dependence, hearing loss, hallucinations, and that he had been hospitalized for morphine detoxification. (Tr. 37-38). Physically, he stated that he was not capable of doing heavy lifting. (Tr. 41). He stated that as a bricklayer he used to be able to lay 1,000 to 1,500 bricks a day, but that as his physical condition deteriorated he could only do 500-700. (Tr. 42). He testified that his arthroscopic surgery allowed him to sit without severe pain but that he was not completely satisfied with the surgery because he still experienced pain when he used his left shoulder. (Tr. 46-47). When asked about limitations with regard to his shoulder, the claimant stated that he could move his arm over his head, forward, and backward, but that moving it to the side and to the front caused him the most pain. (Tr. 47-48). As to his right hand, the claimant testified that he had a metal plate in it and it still caused him pain. (Tr. 49). He testified that Dr. Onara had told him to lift "less as possible" because of his back, shoulder, and hands. (Tr. 50-51). As to his activities of daily living, he stated that his sister lives nearby and helps him get his clothes together, reminds him to take his medications and take care of personal hygiene, and also helps with cooking, and that his brother mows his lawn for him. (Tr. 51). He testified that his shoulder, back, and

neck prevented him from lifting more than ten pounds, and that he also had problems if he had to stand a long time due to back pain. (Tr. 52).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. As to Dr. Smith's May 2009 follow-up, the ALJ noted that the claimant had full active and passive range of motion and improving pain, but did not mention the clicking crepitation. (Tr. 21). The ALJ also summarized Dr. Schatzman's consultative examination report, and mentioned the assessments performed by state reviewing physicians which found the claimant capable of performing medium work with additional postural limitations. The ALJ noted that he modified their RFC findings based on the claimant's subjective complaints. Notably, he added a limitation with regard to the claimant only being able to sit for an hour at a time; he did not, however, add any limitations related to the claimant's neck, back, and shoulder pain. (Tr. 22). The ALJ then found that the claimant's allegations of adverse symptomology were not believable to the extent alleged, and found him not disabled. (Tr. 24).

Although the ALJ found the claimant's left shoulder rotator cuff tear status post surgical repair and degenerative disc disease of the cervical spine to be severe impairments, he failed to include any limitations on the claimant's ability to lift or reach. (Tr. 27-29). An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed.

Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. The ALJ should have explained why the claimant's shoulder and back impairments did not call for corresponding physical limitations to his ability to reach overhead, as well as why he gave credence to the claimant's statements regarding his need to stand after an hour but not with regard to lifting and reaching. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Additionally, "the notice of the determination or decision must contain an explanation of the weight given to the treating source's medical opinion[s]." Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). This is particularly important where, as here, the ALJ only identified one job for the claimant, which required constant reaching. *See* DICOT § 525.687-070 ("Poultry Dresser").

Because the ALJ failed to explain how the claimant's severe impairments of left shoulder rotator cuff tear status post surgical repair and degenerative disc disease of the cervical spine at step two became so insignificant as to require no limitations in his RFC at step four, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma